**Affirmed in Part; Reversed in Part; Remanded; and Memorandum Opinion filed March 30, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00396-CV

---

## MARY ARTHUR; JAMES P. ARTHUR; ARTHUR HOLDINGS, L.P.; ARTHUR P. HOLDINGS, L.P.; ARTHUR J. HOLDINGS., INC.; LEGONITE, INC.; AND PARADISE LIVING, INC., Appellants

## V.

## BLACKBURNE & BROWN MORTGAGE FUND I, Appellee

---

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2018-42929**

---

## M E M O R A N D U M   O P I N I O N

In this case arising from a mortgage debt, the parties reached a settlement agreement that resulted in an agreed final judgment nearly seven years ago, but they have been continuously in litigation in new lawsuits ever since. In this appeal from the judgment rendered in the consolidated lawsuits of 2018, 2019, and 2020, the plaintiffs below appeal the judgment against them on the defendant's counterclaims

for breach of contract and fraudulent inducement. The plaintiffs and one of their attorneys also appeal the sanctions against them.

We conclude that the plaintiffs have failed to demonstrate that the trial court erred in rendering judgment for the defendant on its breach-of-contract and fraudulent-inducement claims. The trial court did err, however, in sanctioning the plaintiffs and their attorney without an evidentiary hearing. We accordingly affirm the trial court's judgment in part, reverse it in part, and remand the case to the trial court for further proceedings.

## I. BACKGROUND

In 2006, James Arthur, Mary Arthur, and Arthur Holdings, LP, were the borrowers or guarantors of a loan by Blackburne & Brown Mortgage Fund I, secured by a deed of trust and assignment of rents on a property at 7639 Beechnut St., Houston, Texas 77074. These loan documents, and amendments thereto, were the subject of a 2016 lawsuit brought against Blackburne by the Arthurs and five of their affiliated entities—Arthur Holdings, LP, Arthur P. Holdings, LP, Arthur J. Holdings, Inc., Legonite, Inc., and Paradise Living, Inc. d/b/a The Cottage Health Services.[1] We refer to the Arthurs and these entities collectively as "the Arthur Parties."

The 2016 lawsuit concluded with a Settlement Agreement in which the Arthur Parties agreed to make scheduled payments on specified dates. Blackburne and the Arthur Parties also agreed to the terms of an Agreed Final Judgment to be filed in the event that any of the scheduled payments were not timely made. The Agreed Final Judgment would order foreclosure of the Beechnut property on the first available date, and in the event of foreclosure, Blackburne would recover liquidated

---

[1] Each of the Arthur Parties' lawsuits against Blackburne were assigned or transferred to the 11th District Court of Harris County. The 2016 lawsuit was assigned cause number 2016-12403.

damages of $400,000.00 if the Agreed Final Judgment were to be filed between July 1, 2017, and July 26, 2018. The Arthur Parties' attorney James O. Okorafor signed the Agreed Final Judgment under the line, "approved to as to form and substance."

The Settlement Agreement called for the Arthur Parties to make a payment of $60,000.00 on June 26, 2017. The Arthur Parties did not make the payment, and in July 2017, Blackburne filed the Agreed Final Judgment, which the trial court signed on August 24, 2017. The trial court also signed a post-judgment order ruling that neither the Settlement Agreement nor the Agreed Final Judgment is void or voidable. But, rather than concluding the litigation between the parties, the Agreed Final Judgment marked the beginning of another round of lawsuits.

## A.    Appeal of the 2016 Lawsuit

In accordance with the Settlement Agreement, the Agreed Final Judgment expressly states that it is not appealable, but the Arthur Parties' attorney James O. Okorafor nevertheless attempted to appeal it anyway. The First Court of Appeals did not review the Agreed Final Judgment on the merits but dismissed the attempted appeal as untimely. *See Holding v. Blackburne & Brown*, No. 01-17-00962-CV, 2018 WL 1003798, at *2 (Tex. App.—Houston [1st Dist.] Feb. 22, 2018, no pet.) (per curiam) (mem. op.).[2]

## B.    The 2017 Lawsuit

On August 24, 2017—the same day that the trial court signed the Agreed Final Judgment in the 2016 Lawsuit—Mary Arthur, Paradise Living, Inc., and Legonite, Inc., again sued Blackburne.[3] The Arthur Parties admit that "[t]he 2017 Lawsuit was

_____

[2] In an apparent misnomer, the appellant in that case was identified as "Arthur P. Holding" and the appellee as "Blackburne & Brown."

[3] The 2017 case was assigned cause number 2017-56890.

3

essentially identical to the 2016 Lawsuit," although "the 2017 Lawsuit did not specifically challenge the Settlement Agreement by name."

Blackburne counterclaimed for breach of the Settlement Agreement, and the trial court granted summary judgment in Blackburne's favor on the ground of res judicata, awarding Blackburne its attorneys' fees as actual damages and holding that the conduct of the plaintiffs and their counsel was sanctionable pursuant to Texas Rule of Civil Procedure 13 and Chapter 10 of the Texas Civil Practice and Remedies Code. The trial court ordered the plaintiffs' attorneys to attend 2.5 hours of continuing legal education ethics courses.[4]

Mary and Paradise Living appealed and the First Court of Appeals affirmed the judgment on the merits. *Paradise Living, Inc. v. Blackburne & Brown Mortg. Fund I*, No. 01-18-00194-CV, 2019 WL 2426168, at *6 (Tex. App.—Houston [1st Dist.] June 11, 2019, no pet.) (mem. op.).[5]

## C.    The 2018 Lawsuit

Less than three months after the trial court's judgment in the 2017 suit was signed, and while the appeal of the 2017 Lawsuit was pending, the first of the three

---

[4] *See Paradise Living, Inc. v. Blackburne & Brown Mortg. Fund I*, No. 01-18-00194-CV, 2019 WL 2426168, at *2–3 (Tex. App.—Houston [1st Dist.] June 11, 2019, no pet.) (mem. op.). Ike Okorafor and Larry Boje were the attorneys sanctioned in that suit. All other references in this opinion to "Okorafor" refer to James Okorafor.

[5] Appellant James Okorafor, who appeared for the Arthur Parties in the 2016, 2018, 2019, and 2020 lawsuits against Blackburne, misrepresents the appeal of the 2017 case, saying "The said lawsuit was dismissed by the Court of Appeals mainly for lack of prosecution—failure to file a brief. This is not a resolution on the merits by the Court of Appeals." Not only is the filing of an appellate brief in that case a matter of public record, but our sister court quoted from the brief in considering and overruling on the merits the five issues presented. *See id.* at *1 (appellants presented five issues on appeal); *id.* at *3 (quoting from the appellants' brief and considering and overruling their third issue on the merits); *id.* at *3–4 (considering and overruling the appellants' first and fifth issues on the merits); *id.* at *4–6 (considering and overruling appellants' remaining issues on the merits).

4

consolidated cases at issue in this appeal was filed on June 27, 2018, by Mary Arthur, James Arthur, Paradise Living, Inc., Legonite, Inc., and Arthur Holdings, LP.[6] Arthur J. Holdings, Inc. later joined the suit. In their pleadings, the plaintiffs denied that the 2016 Lawsuit's Agreed Final Judgment was valid, and they asked the trial court to set aside the Settlement Agreement, vacate the Agreed Final Judgment, and quiet title to the Beechnut property in the plaintiffs' names "free and clear of any claims by defendant's Agreed Judgment."

## D. Mary's Chapter 11 Bankruptcy Case

In March 2019, Mary Arthur filed a Chapter 11 bankruptcy petition.[7] In October 2019, the bankruptcy court issued an order for *in rem* relief from the automatic stay applicable to bankruptcy cases. The properties that were the subject of that order included the Beechnut property, and the authoring court found that "the filing of Debtor's bankruptcy petition was part of a scheme to delay, hinder, and defraud Blackburne through the protection of bankruptcy law." The court held that "the automatic stay shall not apply to Blackburne's interests in the Properties and shall not operate as a stay to Blackburne's enforcement of its rights in and to the Properties. Accordingly, Blackburne is permitted to pursue its state law remedies against the Properties, including foreclosure and/or eviction."

## E. The 2019 Lawsuit

In October 2019, the Harris County Constable's Office noticed the Beechnut property for a foreclosure sale to take place on November 5, 2019. The day before the foreclosure sale, all seven of the Arthur Parties again sued Blackburne and

---

[6] This case was assigned cause number 2018-42929.

[7] Mary had earlier filed a petition for Chapter 13 bankruptcy and admitted that she filed the petition "to stop foreclosure on the rental properties," but the properties to which she referred in that case did not include the Beechnut property.

obtained a temporary restraining order to prevent the sale;[8] however, the order was not provided to Blackburne or the Harris County Constable's Office, and the sale took place as scheduled.

After the sale, the Arthur Parties seem to have briefly vacillated in their continued opposition to enforcement of the Agreed Final Judgment. While represented by attorney Troy Wilson, the Arthur Parties non-suited their claims with prejudice, but while subsequently represented by James Okorafor in the same case, the Arthur Parties appealed their own non-suit. The First Court of Appeals dismissed the appeal for lack of jurisdiction because the order dismissing the Arthur Parties' claims was not a final judgment, given that Blackburne's counterclaims remained pending. *See Arthur v. Blackburne & Brown Mortgage Fund, Inc.*, No. 01-20-00122-CV, 2021 WL 4597108, at *1 (Tex. App.—Houston [1st Dist.] Oct. 7, 2021, no pet.) (per curiam) (sub. mem. op.).

### F.    The 2020 Lawsuit

In 2020, attorney James Okorafor, on behalf of the Arthur Parties, filed yet another lawsuit against Blackburne.[9] In their petition, the Arthur Parties admitted that the Settlement Agreement contained a "June 26, 2017 payment deadline" and that they "declined to make the $60,000 lump sum payment on June 26, 2017." They asserted that Blackburne wrongfully asserted a "technical default" for this nonpayment.

In this suit, the Arthur Parties added Blackburne's attorney John Michael Raborn as a defendant. Raborn moved for dismissal from the lawsuit on the ground that he was sued solely in his capacity as trustee under the deed of trust securing the

---

[8] That case was assigned cause number 2019-80239.

[9] This case was assigned cause number 2020-13849.

Beechnut property and therefore was not a necessary party.[10] The trial court agreed, but although it dismissed the claims against Raborn, the trial court denied a motion to sever the dismissed claims against Raborn from the remainder of the suit.

**G.      Proceedings in the Consolidated 2018, 2019, and 2020 Lawsuits**

In September of 2020, the trial court consolidated the 2018, 2019, and 2020 Lawsuits into the 2018 Lawsuit's cause number.

In January of 2021, Blackburne filed its combination Second Amended Motion for Summary Judgment and Motion for Sanctions and sent counsel notices that the motion was set for telephonic hearing. In the motion, Blackburne sought judgment disposing of all of the Arthur Parties' claims and affirmative defenses and sought judgment on its own claims that the Arthur Parties fraudulently induced Blackburne to sign the Settlement Agreement and breached the same agreement. In addition, Blackburne sought sanctions against all of the Arthur Parties and against attorneys Chris Conry, Troy Wilson, and James Okorafor, who, respectively, signed the initial petitions in the 2018, 2019, and 2020 lawsuits.

Three weeks after Blackburne filed its motion for summary judgment and sanctions, Okorafor filed a motion to withdraw as the Arthur Parties' counsel. The trial court signed the order granting Okorafor's motion to withdraw on May 11, 2021.

Four days later, the trial court granted Blackburne's motion for summary judgment and for sanctions, holding the Arthur Parties jointly and severally liable for damages of $257,656.26 for breach of contract, and holding each of the Arthur Parties individually liable for damages of $20,000.00 for fraud. In addition, the trial

---

[10] *See* Tex. Prop. Code § 51.007.

court held the Arthur Parties and Okorafor jointly and severally liable for sanctions of $30,000.00.

Okorafor and the Arthur Parties timely moved for reconsideration or new trial, and Blackburne moved to modify the judgment to correct a clerical error in Okorafor's name. The trial court signed an amended final order in accordance with Blackburne's request, and the Arthur Parties timely filed an amended motion for reconsideration.[11] The Arthur Parties' motion was overruled by operation of law and again by signed order before the trial court's plenary power expired.

## H.    The First Appeal from the Final Judgment

The first notice of appeal from the judgment in the consolidated case was filed prematurely and was assigned to the First Court of Appeals, so that court acquired dominant jurisdiction over appellate proceedings upon the trial court's signing of the final judgment.[12] In that appeal, James and Mary Arthur, Legonite, Inc., Paradise Living, Inc., and Arthur Holdings, L.P., attempted to appeal the order dismissing Raborn. *See Arthur v. Raborn*, No. 01-21-00072-CV, 2022 WL 17835228, at *1 (Tex. App.—Houston [1st Dist.] Dec. 22, 2022, no pet.) (mem. op.). After the final judgment was signed, the dismissal order merged into it, and the appeal proceeded. Our sister court affirmed Raborn's dismissal from the case.

---

[11] Okorafor also filed another motion for reconsideration after the trial court signed the amended final judgment, but his motion was untimely.

[12] When the first appeal was perfected, the First Court of Appeals acquired dominant jurisdiction over the entire controversy. *See Miles v. Ford Motor Co*., 914 S.W.2d 135, 138–39 (Tex. 1995) (per curiam). Because that proceeding has concluded, we can proceed to dispose of this appeal. *See id.* (when one appellate court has dominant jurisdiction, the appellate court in which the second notice of appeal is filed should abate until proceedings have concluded in the court with dominant jurisdiction).

## I. The Second Appeal from the Final Judgment

While the appeal of the final judgment was pending in the First Court of Appeals, the Arthur Parties filed their second notice of appeal, and Okorafor filed his first notice of appeal. Those appeals were assigned to this Court.

In this proceeding, the Arthur Parties challenge the summary judgment in Blackburne's favor on its claims for breach of contract and fraudulent inducement. In addition, Okorafor joins the Arthur Parties in appealing the portion of the judgment holding them jointly and severally liable for payment of sanctions.

## II. SUMMARY JUDGMENT

We review summary judgments de novo. *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014) (per curiam). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). On review, we construe the evidence in the light most favorable to the non-movant, crediting evidence favorable to the nonmovant if a reasonable juror could and disregarding contrary evidence unless a reasonable juror could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

### A. Breach of Contract

Blackburne sought summary judgment on the ground that the Arthur Parties breached the following provision of the Settlement Agreement:

Plaintiffs agree they will **NOT** attempt to or actually impede, obstruct, or oppose such foreclosure [of the Beechnut property] in any manner, including via lawsuit, temporary restraining order, temporary injunction, or permanent injunction. Plaintiffs expressly waive any defense to enforcement of this Settlement Agreement, entry of the Agreed Final Judgment, or foreclosure.

Blackburne argued that the Arthur Parties breached this provision by, among other things, filing the 2017, 2018, 2019, and 2020 Lawsuits; appealing from the judgment in the 2017 Lawsuit; obtaining a temporary restraining order in the 2019 Lawsuit in an effort to prevent the 2019 foreclosure sale; and, in Mary Arthur's case, temporarily obtaining an automatic stay of any foreclosure proceedings by filing for bankruptcy. In connection with its breach-of-contract claim, Blackburne sought to recover all legal fees and expenses it had incurred since the day after summary judgment was entered in the 2017 Lawsuit, whether those fees and expenses were characterized as actual damages, or alternatively, under the fee-shifting statute applicable to breach-of-contract claims. *See* TEX. CIV. PRAC. & REM. CODE § 38.001.

The Arthur Parties say that they did not breach the Settlement Agreement, because they asked Blackburne "for a payoff amount to retire the entire debt but [Blackburne] consistently refused to give the payoff amount thwarting [the Arthur Parties'] attempt to obtain financing to retire the debt." But, the Settlement Agreement itself specified all payments to be made and the consequences of non-payment as follows:

9. Plaintiffs shall pay to Defendant the following:
   - $29,872.76 in certified funds to Blackburne & Sons Realty Capital by May 26, 2016; and
   - $139,000.00 via wire transfer on or before July 26, 2016 ($89,000.00 to be applied to principal and $50,000.00 to be applied to attorneys' fees incurred by Defendant); and

- $12,355.45 via wire transfer by the 26th of every month starting June 26, 2016 and continuing until June 26, 2018 (totaling 25 monthly payments); and

- $60,000.00 via wire transfer by June 26, 2017 (to be applied to principal).

- $909,711.17 via wire transfer by July 26, 2018.[1]

. . .

11. Plaintiffs will not make additional payments from those identified in paragraph 9. This is not intended to prevent early full payment of any of the above scheduled payments, and in the event of an early full payment of any of the above scheduled payments such payment is no longer due.

12. The Parties have agreed to the terms of an Agreed Final Judgment, attached hereto as Exhibit C, to be filed in this case in the event any of the above payments in paragraphs 8 and 9 are not timely made or wired by Plaintiffs .

. . .

[1] This amount is agreed and derived from the amortization schedule attached hereto as Exhibit B, adding $50,000.00 for attorneys' fees incurred by Defendant.

Adding the figures listed in paragraph 9 shows that the total amount that the Arthur Parties jointly agreed to pay was $1,447,470.18. The Settlement Agreement allowed for early payment "of the above scheduled payments," but it did not require Blackburne to assist the Arthur Parties to obtain financing by providing a pay-off amount.

Moreover, the Arthur Parties agreed that Blackburne was to file the Agreed Final Judgment in the event any payment in paragraph 9 was not timely made, and they agreed to the judgment's form, substance, and non-appealability. The Arthur Parties also admit that they "declined" to make the $60,000 payment due on June 26, 2017. As a long-settled matter of law, their failure to make this payment was a breach of the Settlement Agreement by all seven of the Arthur Parties, and that

11

breach alone was sufficient to entitle Blackburne to rendition of the Agreed Final Judgment.

Nevertheless, the Arthur Parties opposed rendition of the Agreed Final Judgment, appealed it, and have sought for years to have it set aside or to block its enforcement. By these actions, the Arthur Parties committed additional breaches of the Settlement Agreement. To cite just one example in which all seven of the Arthur Parties joined in a single additional breach, all of the Arthur Parties agreed they would not attempt to obstruct the foreclosure of the Beechnut property by a lawsuit or temporary restraining order, but all seven of the Arthur Parties filed the 2019 Lawsuit in which they all jointly obtained a temporary restraining order in an effort to obstruct the foreclosure sale.

Most of the Arthur Parties' appellate arguments concerning Blackburne's breach-of-contract claim amount to no more than assertions that various material fact questions exist, for which the Arthur Parties offer a global citation to over two hundred pages of exhibits. But, "[t]his Court has no duty to search a voluminous record without guidance from appellant to determine whether an assertion of reversible error is valid." *Casteel-Diebolt v. Diebolt*, 912 S.W.2d 302, 305 (Tex. App.—Houston [14th Dist.] 1995, no writ).

The Arthur Parties' most detailed argument concerns certain funds that were paid into the registry of the trial court and released to Blackburne. At some point during the history of the litigation between the parties, the Arthur Parties paid money into the registry of the court under the cause number of the 2016 Lawsuit in which the Agreed Final Judgment was rendered; the Arthur Parties cite no evidence identifying the purpose of the payments. Blackburne applied for release of the funds as partial payment of the liquidated-damages award of the Agreed Final Judgment. The trial court granted Blackburne's request and ordered the principal amount of

$87,825.08, plus accrued interest, released to Blackburne. On appeal, the Arthur Parties assert there is a material fact question as to whether Blackburne violated the Settlement Agreement by applying the released funds to its liquidated damages before foreclosing on the Beechnut property, as opposed to applying the funds from the registry of the court to any liquidated damages that remained unpaid after applying the proceeds from the foreclosure sale of the Beechnut property. Significantly, however, the Arthur Parties did not oppose Blackburne's motion for the trial court to release the funds in its registry to Blackburne, and the trial court granted the motion in December 2018—eighteen months *before* Blackburne foreclosed on the Beechnut property. In light of the Arthur Parties' lack of opposition to the pre-foreclosure release of funds, this complaint was not preserved for review even in the 2016 Lawsuit in which these events took place. *See* TEX. R. APP. P. 33.1. The complaint is not properly before us in this appeal from the judgment in the consolidated 2018, 2019, and 2020 cases.

We overrule the Arthurs' first issue challenging the portion of the judgment holding the seven Arthur Parties jointly and severally liable to Blackburne for $257,656.26 as damages for breach of contract. We affirm this portion of the judgment.

## B. Fraudulent Inducement

In its summary-judgment motion, Blackburne argued that the Arthur Parties fraudulently induced Blackburne to enter into the Settlement Agreement and to approve the Agreed Final Judgment by falsely representing that they would pay as agreed and would not oppose Blackburne's collection efforts. To prevail on its fraudulent-inducement claim, Blackburne had to prove that the Arthur Parties falsely promised to perform a future act while having no present intent to perform it; that the Arthur Parties intended Blackburne should rely or act on that misrepresentation;

13

that Blackburne did in fact rely on it; and that Blackburne was injured by that reliance. *See Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019).

In challenging the judgment for Blackburne on its fraudulent-inducement claim, the Arthur Parties quote the Settlement Agreement's statement, "The Parties expressly agree that this Settlement Agreement is not the result of fraud, collusion, duress, coercion, undue influence, or misrepresentation." The Arthur Parties next quote Blackburne's statement from its summary-judgment motion that the Arthur Parties did not intend to honor the promises they made in the Settlement Agreement, but instead made such promises merely "to induce Blackburne to execute the Settlement Agreement and approve the Agreed Final Judgement [sic], such that Plaintiffs could procure additional time to find a way out of their unhappy bargain." The Arthur Parties then assert, "This is exactly what [Blackburne] agreed was not fraud in the agreement itself!" However, the Arthur Parties offer no argument or authorities in support of their assumption that the quoted language from the Settlement Agreement was sufficient to waive Blackburne's claim that the Arthur Parties entered into the agreement without the intention to abide by it.[13] We therefore consider this argument waived. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

The Arthur Parties similarly assert that "there is no evidence of fraud," but here, too, the Arthur Parties fail to support this statement. They do not mention the evidence on which Blackburne relied, and they do not explain why they believe that

---

[13] *But see Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 53–54, 61 (Tex. 2008) (specific waiver-of-reliance language can contractually bar a fraudulent-inducement claim, but this "should not be construed to mean that a mere disclaimer standing alone will forgive intentional lies regardless of context").

14

evidence has no probative value. Again, we conclude this argument is waived. *See id.*

In the Arthur Parties' remaining argument concerning the fraudulent-inducement claim, they state that "the evidence showed nothing to indicate any kind of post-judgement [sic] activity that would constitute a joint enterprise or joint venture of fraud that would result in a joint and liable finding as this judgment does." But this argument is based on the mistaken premise that the trial court held the Arthur Parties jointly and severally liable for fraudulent-inducement damages, when in fact, the trial court held each of the Arthur Parties individually liable. Thus, this argument is inapplicable.

Having disposed of each of the Arthur Parties' arguments for reversal of the judgment on Blackburne's fraudulent-inducement claim, we overrule this issue and affirm the portion of the judgment holding the Arthur Parties individually liable to Blackburne for fraud damages in the amount of $20,000.00 each.

### III. SANCTIONS

In the parties' final issue, the Arthur Parties and attorney James Okorafor contest the portion of the judgment holding them jointly and severally liable for sanctions in the amount of $30,000.00 under Chapters 9 and 10 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure. We review the imposition of sanctions for abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). A trial court abuses its discretion if it acts without reference to any guiding rules and principles, such that its ruling is arbitrary or unreasonable. *Id.* But "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

15

## A.     Chapter 9

Chapter 9 of the Texas Civil Practice and Remedies Code applies only to proceedings to which neither Rule 13 nor Chapter 10 applies. TEX. CIV. PRAC. & REM. CODE § 9.012(h). Because both Rule 13 and Chapter 10 apply to the proceedings under review, Chapter 9 is inapplicable as a matter of law. We therefore conclude that the trial court abused its discretion in sanctioning the Arthur Parties and Okorafor pursuant to Chapter 9 of the Civil Practice and Remedies Code, and we reverse that part of the judgment.

## B.     Rule 13

Texas Rule of Civil Procedure 13 provides in pertinent part as follows:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. Attorneys or parties who shall bring a fictitious suit as an experiment to get an opinion of the court, or who shall file any fictitious pleading in a cause for such a purpose, or shall make statements in pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, shall be held guilty of a contempt. If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215-2b, upon the person who signed it, a represented party, or both.[14]

Okorafor asserts that the sanctions imposed by the trial court are not among those listed in Texas Rule of Civil Procedure 215.2(b). He is correct.

---

[14] This is the rule as provided on the website of the Texas Judicial Branch, *available at* https://www.txcourts.gov/rules-forms/rules-standards/. On Westlaw, the rule instead refers to "an appropriate sanction available under Rule 215," followed by the footnote, "Probably Vernon's Ann. Rules Civ. Proc., rule 215.2(b)."

"Rule 13 authorizes the imposition of the sanctions listed in Rule 215.2(b), which only provides for a monetary penalty based on expenses, court costs, or attorney's fees." *Low*, 221 S.W.3d at 614. But here, the trial court held Okorafor and the Arthur Parties "jointly and severally liable in the sum of: thirty thousand dollars and no cents ($30,000.00)." Blackburne did not ask the trial court to impose sanctions in this amount, which is unconnected to attorney's fees, expenses, or taxable court costs. To the contrary, Blackburne stated in its motion that if the trial court awarded Blackburne all of the attorney fees and expenses it sought via summary judgment, then the trial should "impos[e] a penalty to be paid to the Court pursuant to Texas Civil Practice & Remedies Code § 10.004(c)(2)." Under that provision, a trial court may sanction a person who has signed a pleading or motion in violation of Chapter 10 by ordering the person "to pay a penalty into court." TEX. CIV. PRAC. & REM. CODE § 10.004(c)(2).[15]

Because the sanctions imposed are not available under Rule 13, the trial court abused its discretion in basing the sanctions award under Rule 13. We accordingly reverse the portion of the judgment awarding sanctions pursuant to Rule 13, for the sanctions can be affirmed, if at all, only under Chapter 10.

## B.    Chapter 10

Chapter 10 of the Texas Civil Practice and Remedies Code provides as follows:

> The signing of a pleading or motion as required by the Texas Rules of
> Civil Procedure constitutes a certificate by the signatory that to the

---

[15] The judgment does not say whether the sanctions are payable to Blackburne or to the registry of the court, but "[w]hen an ambiguous order is susceptible to two reasonable constructions, an appellate court should adopt the construction that correctly applies the law." *MacGregor v. Rich*, 941 S.W.2d 74, 75 (Tex. 1997) (per curiam). We therefore construe the judgment as ordering the sanctions as a penalty to be paid into court pursuant to Chapter 10.

signatory's best knowledge, information, and belief, formed after reasonable inquiry:

(1)    the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)    each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3)    each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)    each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

*Id.* § 10.001. "A party may make a motion for sanctions, describing the specific conduct violating Section 10.001." *Id.* § 10.002.

### 1.    *Legal sufficiency of the motion for sanctions*

Okorafor argues that Blackburne's motion for sanctions is legally insufficient in that it does not describe the specific conduct that is sanctionable. Blackburne simply states,

> The 2018 Suit, 2019 Suit, and 2020 Suit—the initiating pleadings and all subsequent pleadings, motions, and responses filed by Plaintiffs, were groundless and dishonest, brought in bad faith to harass, delay, and to needlessly increase the cost of litigation; and are patent violations of a judgment of this Court.
>
> . . .
>
> Attorney Chris Conry signed the initial petition in the 2018 Suit. Attorney Troy Wilson signed the initial petition in the 2019 Suit. Attorney James Okorafor signed the initial petition in the 2020 suit. All three lawyers continued to litigate the cases, including the filing of

18

numerous motions aimed to delay enforcement of the Agreed Final Judgment.

. . .

All Plaintiffs are also subject to sanctions because they are implicated in the sanctionable conduct apart from having entrusted the legal representation to the attorneys. All Plaintiffs (i) were parties to the 2016 Suit in which the same "facts" were asserted and litigated; (ii) are parties to the Settlement Agreement in which they agreed to not oppose enforcement of the Agreed Final Judgment, (iii) are parties to the Agreed Final Judgment which disposes of the claims asserted in the 2018 Suit, 2019 Suit, and 2020 Suit; and (iv) are parties to this consolidated 2018 Suit.

Blackburne's motion for sanctions does not identify the Arthur Parties' motions and responses that allegedly violate Chapter 10, but Blackburne does identify three pleadings that allegedly do so: the original petitions in the 2018, 2019, and 2020 Lawsuits. In addition, the "Facts" section of Blackburne's motion recounts the history of the Arthur Parties' attempts to evade or delay enforcement of the Agreed Final Judgment, and the paragraph concerning sanctions against the plaintiffs gives reasons why Blackburne believes those pleadings were unwarranted. We conclude that this is sufficiently specific. *See, e.g.*, *Marquez v. Weadon*, No. 05-17-00276-CV, 2018 WL 3829267, at \*4 (Tex. App.—Dallas Aug. 13, 2018, no pet.) (mem. op.) (sanctions motion that did not point out each statement that was allegedly false, deceptive, misleading, or without merit was legally sufficient in that the motion clearly complained about the petition's factual allegations and requests for extraordinary relief); *Akinwamide v. Transp. Ins. Co.*, 499 S.W.3d 511, 526 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (motion for sanctions challenging the filing of a "2014 motion to set aside a 2000 judgment" and describing all of the sanctioned party's previous attempts to overturn the 2000 judgment was legally sufficient).

## 2. *Failure to hold an evidentiary hearing*

Before imposing sanctions under Chapter 10, the trial court must hold an evidentiary hearing. *R.M. Dudley Constr. Co., Inc. v. Dawson*, 258 S.W.3d 694, 709 (Tex. App.–Waco 2008, pet. denied). Blackburne had filed a "Second Amended Motion for Final Summary Judgment and Motion for Sanctions," and a week before the scheduled telephonic hearing on the motion, the Arthur Parties filed a response in which they objected that the "hearing is not an evidentiary hearing" and so would not afford them, and their attorneys, due process.[16]

Because neither the record nor the parties' briefs indicate that an evidentiary hearing was held, we presume that the hearing was non-evidentiary. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 783 (Tex. 2005). And by failing to hold an evidentiary hearing, the trial court impliedly overruled the Arthur Parties' objection. *See* TEX. R. APP. P. 33.1(a)(1). But the Arthur Parties are correct: the trial court abused its discretion by sanctioning the Arthur Parties and their counsel over the preserved objection that the scheduled hearing was non-evidentiary. *See, e.g.*, *Aldine Indep. Sch. Dist. v. Baty*, 946 S.W.2d 851, 853 (Tex. App.—Houston [14th Dist.] 1997, no writ). Thus, without addressing the Arthur Parties' and Okorafor's remaining arguments for the reversal and remand of the sanctions, we reverse this part of the judgment and remand Blackburne's request for sanctions.

## IV. CONCLUSION

For the reasons described above, we affirm the portions of the judgment awarding Blackburne damages on its breach-of-contract and fraudulent-inducement

---

[16] The Arthur Parties also moved for a new sanctions trial on the ground that no evidentiary hearing was held, but the motion was overruled both by operation of law and by a signed order.

claims, reverse the portion of the judgment imposing sanctions on the Arthur Parties and Okorafor, and remand the case to the trial court for further proceedings.


                                                   /s/     Tracy Christopher
                                                           Chief Justice


Panel consists of Chief Justice Christopher and Justices Wise and Hassan.